You want to make sure we hear this morning. If you don't address something that's presented in the briefs, of course, you're not waiving anything. Everything's fully under submission when we finish. We're probably going to have some questions this morning, but do be mindful of our time and the traffic light system. When the red light shines, please do pay attention. It is time to finish, as Judge Edmondson used to say, do not treat the red light as aspirational. And without further ado, let's hear the first case, United States v. Dubois. Ms. Kaplan. Good morning, and may it please the Court. I'll begin with the Second Amendment and controlled handgun issue, if time permits. Mr. Dubois is among the people, as defined in the First, Second, Fourth, and Ninth Amendments. He has an individual right to possess a firearm because his prior convictions are not for offenses that are dangerous. Well, you know, the problem is we've resolved this question. We have binding precedent that binds this panel on this issue, do we not? So, Your Honor, I would respectfully disagree. I believe the Court is referring to Rozier, and the Rozier case was decided relying on the dicta in Heller about law-abiding citizens. You know what we say about dicta, right? There's dicta, there's dicta, and then there's Supreme Court dicta. That's correct, Your Honor. And there's Supreme Court dicta that has been repeated by the Supreme Court, not only in Heller but McDonnell, and even Bruin says that it was consistent with those decisions, which were very specific in saying that nothing that they had held with regard to the Second Amendment called into question long-standing prohibitions of felons possessing firearms. Well, a few points on that, Your Honor, if I may. While Bruin, there was some commentary and again dicta, albeit Supreme Court dicta, in Bruin to that effect. The law-abiding citizen issue was not really at issue in either Heller, McDonnell, or Bruin because all three of the people who sought relief before the Court were clearly law-abiding citizens. What Bruin did is change the test that the courts must use to decide how the Second Amendment applies. Well, let's go back to Rozier, right? Rozier is holding, right? Yes, Your Honor. And so it's binding on us under our prior panel precedent rule unless an intervening Supreme Court decision is just flatly irreconcilable. Isn't that right? That's the way our rule works? That is what the Court has said about how this rule works. I think that the Jackson case has restated this Court's prior panel precedent rule and this issue was not before the Court. Let me read you what we said in Del Castillo. We said that the later Supreme Court decision must demolish and eviscerate each of its fundamental props. And Your Honor, I would submit that Bruin does that because what Bruin says is we don't do any balancing. We look to whether this is an issue that existed at the time of the founding, whether Mr. DuBois' Second Amendment rights are implicated, which they are. And if the issue of a felon possessing a firearm existed at the time of the founding, then it is solely the government's burden to point to a distinctly similar regulation that enacted a permanent ban on felons possessing firearms. And I would submit that the government did not meet that burden and that Mr. DuBois' as-applied challenge should be successful. When you look at the categorical bans that were in place at the time of the founding, setting aside those that wouldn't offend the Equal Protection Clause today, there were no permanent bans with the exception of Native Americans, slaves, Catholics who refused to swear an oath, loyalists who refused to swear an oath. And even then, it wasn't— All because they were considered as not necessarily law-abiding. It was because they were considered dangerous. And the government in their arguments in Rahimi to the Supreme Court tried to parse law-abiding and responsible. But the analysis in the historical record all comes back to dangerousness. And so I actually think the government has an easier argument in Rahimi where it's a domestic violence restraining order and there's an individualized finding of dangerousness and a limited duration on the ban. There's no historical tradition of banning felons from having firearms in this country where they are not dangerous. I think that— Well, your client—your client is dangerous. Well, I would respectfully disagree, Your Honor. He has no prior history of firearms use. He has no violent convictions. And I think the Third Circuit's Ombak decision in Range and the dissent in Folestar as well as Justice Barrett's dissent in Khyentr-Vibar have the better analysis. Because when you look at the history, people who—even who used a firearm in the commission of a crime, they could forfeit that gun. If there was a risk of dangerousness or riot or breaching the peace, they could be required to post a surety, although those laws were rarely enforced. And so when we look at what Bruin requires, it requires the government to show that there's a historical tradition of a lifetime ban for someone like Mr. DuBois who has no prior dangerous convictions, has never been a threat to anyone. And so we would submit that they can't carry over. He's a drug dealer. Drug dealers aren't dangerous? He does have prior convictions for drugs, Your Honor, for marijuana. Possession with intent to distribute. Yes. Possession with intent to distribute marijuana in which no firearm was involved and there was no violence. And so— Let me, if I could, I want to just get back for a moment to some of the questioning at the beginning because for me, there really is a prior precedent panel problem here. And I don't see how Bruin demolishes our prior holdings in Rozier or White. And especially because Rozier says that, first of all, the discussion about felons in Heller and McDonald is not dicta. And even if it is dicta, it's persuasive dicta and we're going to rely on it. And I don't see that Bruin says—does anything to overrule specifically and expressly that whether you want to characterize it as dicta or not dicta or just persuasive dicta, whatever you want to characterize it as. I don't see anything in Bruin that expressly does that. And so how can we say that it's on all fours with and completely demolishes the basis for our holding in Rozier? So two things, Your Honor. I think, first of all, Bruin fundamentally changes the test. And even though the court said that it wasn't disturbing the long-standing prohibitions on felons, if you apply the test and it says you must use in Bruin, then the long-standing prohibition on Mr. Dubois in an as-applied challenge fails. Second of all, even if this Court does think that it's bound by Rozier, I think that we will get more guidance from the Supreme Court upon their decision in Rahimi and we would ask for supplemental briefing at that point. And what exactly do you believe that the Rahimi decision will help provide some clarity on? There was a lot of discussion during the oral arguments in Rahimi about the impact of the historical analog and to what extent, if at all, it should apply. So are you asking us to stay all or a portion of your appeal pending the outcome of that case? I think it will give us guidance, Your Honor, on what the court meant by responsible and law-abiding and if that's even relevant to the Bruin test, which we would submit it's not, that it's a dangerousness analysis. We did ask the court to stay this case both pending Rahimi and Jackson, which the court declined to do, but we would ask the court to reconsider given that those issues will inform these. And turning to the controlled substance offense for a few moments, if I may. Just quickly in terms of the dangerousness, so your client was convicted and had an enhanced sentence because of a prior serious drug offense. I know you wanted to debate that and then I believe the conviction, you know, that it was a firearms violation. So what would be the analysis in terms of determining the dangerousness of your client? So, Your Honor, I think we would have to look to his prior convictions, which are not for, as I said, for violent crimes. He didn't pose a risk of dangerousness to others. While he did have a prior marijuana distribution offense, there was no indication that he'd ever been a physical danger to anyone akin to the analysis for crime of violence or violent felony under either the ACCA or the crime of violence definition of 4B1.2. And for a controlled substance offense, there is a circuit split on this issue, as the court is aware. But generally speaking, we apply the law that is in effect at the time of federal sentencing. The structure of 4B1.2 suggests that there should be a uniform definition to avoid disparity and the cases that are on the other side of the circuit split do not grapple with 28 U.S.C. 994H, which directs that the enhanced career offender penalties be for offenses described in 21 U.S.C. 841, which is the Controlled Substances Act. So there is a statutory directive. And when you look at the text of 4B1.2, the grammar of it, yes, you can receive an enhanced sentence for either a federal or state conviction, but it has to be for a controlled substance offense, which is a term of art. And we would suggest that under the text of the guideline, using the grammar where the commas are placed, which phrases modify each. If you're going to look, though, at the law that applies to the conviction that defines the elements, there's no reason to me, at least, that you wouldn't look at that jurisdiction's law to determine what that jurisdiction defines as a controlled substance. If I may, Your Honor, I think that reads a bit too much into McNeil. Yes, you look under McNeil to what the elements were of the state offense at the time of that conviction. I'm talking about the text of the guideline, in that the controlled substance offense is a prior conviction under state law. That's what the guidelines are referring to, an offense under federal or state law. So if you look to the state law, part of what you would look to is what state law defines as a controlled substance. There's no reference in the guideline to the federal controlled substance. So two points to that, if I may, Your Honor. First, yes, it does refer to a federal or state law conviction for an offense, but then you have to decide whether that offense is a controlled substance offense that involves the manufacture, et cetera, of a controlled substance. But it defines a controlled substance offense with reference to the jurisdiction's law. So, Your Honor, I would respectfully disagree, and I would suggest that 28 U.S.C. 994H directs that it be for offenses described in 21 U.S.C. 841, so it does incorporate a reference to the Controlled Substance Act. The government conceded that the Controlled Substance Act was the appropriate comparator in Abdulaziz in the First Circuit, and we would ask the Court to so conclude. Okay. Ms. Kaplan, you've saved four minutes. Let's hear from Mr. Mendo. Thank you. Good morning. May it please the Court, Gabriel Mendo for the United States. As the Court's questions have indicated, Mr. DuBois' constitutional challenge to his 922G conviction is foreclosed by this Court's binding precedent in Rozier. Bruin is not clearly on point and does not abrogate the holding of Rozier for a couple of reasons. First of all, Bruin, of course, is not about felons at all. It's not a case about 922G at all. It explicitly limits its holding to law-abiding citizens. I think that phrase appears about 14 times in the Court's opinion. And the holding of Bruin was to reject the use of a two-part means and scrutiny framework that a number of circuits had developed in the years after Heller. But this Court didn't use that framework in Rozier, and therefore, the Bruin court's rejection of that framework doesn't weaken, undermine, and it certainly doesn't abrogate the holding in Rozier. I would point this Court to some language on abrogation. It's not in our brief, but I think it's responsive to the questions today. This is from a 2007 case. It's Main Drug v. Aetna U.S. Health Care, and this Court said, quote, Obedience to a Supreme Court decision is one thing, extrapolating from its implications a holding on an issue that was not before that court in order to upend settled circuit law is another thing. Respectfully, Mr. DuBois is asking this Court to do that other thing, which this panel may not do. I was also a bit surprised to hear my colleague characterize her client's challenge as an as-applied challenge. Her briefs on appeal do not raise an as-applied challenge. If this were an as-applied challenge, you would see things in her brief articulating why Mr. DuBois' prior convictions, as opposed to some other set of felons, did not qualify. Her briefs don't do that, and I think that an as-applied challenge was waived and cannot be resurrected at oral argument. But to the extent that Mr. DuBois relies on the Third Circuit's opinion range, first of all, it's contrary to this Court's precedent, and this panel, of course, is bound to follow its own precedent and not that of another circuit. It also is an as-applied challenge, which she hasn't brought. And it articulates — really, it doesn't articulate any test at all. The holding of the Third Circuit in that case is that 922G1, as applied to, quote, people like range, is unconstitutional. I don't know what that means. It's not clear that the Department of Justice understands what it means and has filed a cert petition on that issue. But it seems clear that even if it doesn't apply to people like range, Mr. DuBois is not a person like range. Unlike Mr. Range, who had a single misdemeanor conviction for lying on a food stamp application, of course, Mr. DuBois has multiple felony convictions for drug trafficking. Turning to the 4B1.2 issue. Would you agree, or what is your position in terms of the relevance of those particular drug trafficking convictions when it comes to determining whether or not he's dangerous? If, indeed, that's the analysis that's required. So, Your Honor, of course, our position is that is not the analysis that is required. But our position would be to the extent that there is going to be some sort of felon-by-felon adjudication of which person falls under 922G or not, that this Court precedent make clear that a drug trafficking conviction puts a felon into the category of dangerousness. And, of course, it's not his specific conduct. It would be the crime itself. And this Court has made clear over and over again that those convicted of drug trafficking are dangerous and, in particular, has emphasized the dangerous interaction of drugs and guns on numerous occasions. So we would submit that even if the test and range were somehow before this Court, Mr. DuBois would fall within the category of people who are dangerous. With respect to the issue of the longstanding practice of denying people with felony convictions the ability to carry firearms, some have argued, and we've heard that today, that that language in Bruin is dicta. Others believe it's just a recognition, again, of this longstanding tradition. If the Court does have to engage in a historical analysis, where would you point us to to support that statement in terms of the longstanding tradition? Your Honor, our brief contains some of our references. I would also point the Court to the Eighth Circuit's recent decision in Jackson. Unlike this Court, the Eighth Circuit didn't have precedent that foreclosed a Bruin-type challenge. And so the Eighth Circuit in Jackson starts fresh. And it starts with Heller. And it starts with the Supreme Court's admonitions in Heller, repeated in McDonald, repeated in Bruin. There's nothing about any of this jurisprudence that should cast doubt on these prohibitions. But then it walks through and it goes back to the 1600s in England and the founding era legislative acts and treatises and discusses, I think, as was discussed earlier, some of the prohibitions on the possession of firearms by Native Americans or Catholics. And all of which, of course, would be struck down for other reasons today, but showed that there was a historical tradition of excluding entire categories of people who fell within the determination that they were dangerous. And it didn't require an individual showing that this Native American or this person of Catholic faith is dangerous. It was a determination by the legislature that this class is dangerous. As the Eighth Circuit said in Jackson, 922G1 is a modern analog of that. It is Congress's determination that people who have been convicted of crimes punishable by more than one year fit within that category of dangerousness. If I could turn to the controlled substance definition 4B1.2. First of all, in United States v. Bates, which is a post-farm bill case, this Court already held that a Georgia conviction for possession with intent to distribute marijuana is a controlled substance offense. We think that forecloses Mr. DuBois' challenge. But it also fails on the merits as well. As Sixth Circuit has now held, the plain language of 4B1.2 does not require a cross-reference to the Controlled Substance Act. Congress and the Sentencing Commission know how to cross-reference federal statutes. So if you contrast this, for example, with the Armed Career Criminal Act, which explicitly requires a cross-reference to the federal drug schedules, and this Court in Jackson grappled with when does it have to match, but there is no question it has to match because Congress has told us as much. But this is a different issue from Jackson. Entirely different. And the outcome is driven entirely by this difference in the text, which is that unlike ACCA and unlike other provisions of the Sentencing Guideline, the Sentencing Commission chose not to include a cross-reference requiring that the state controlled substance offense also match the federal drug schedules. As the Third Circuit said in Lewis earlier this year, Mr. DuBois' position would require this Court to read into it a cross-reference that simply isn't there. The plain language text of the provision precludes his argument. And unless there are further questions, we would ask this Court to affirm Mr. DuBois' convictions and sentences. Any other questions? I had a question about the fine. I believe Mr. DuBois is also challenging the imposition of the fine here. It appears from the record that the District Court did not make a specific finding but instead relied on the PSR or the PSI. Number one, am I correct about that? And if so, is that enough? You are correct, Your Honor, and that is enough. In paragraph 98 of the PSR, it stated that the defendant had the ability to pay a fine within the guideline range. Mr. DuBois did not object to that portion of the PSR, and that means it is an admitted fact which the District Court is allowed to rely on. The government doesn't have to present any evidence to facts that Mr. DuBois has admitted because he admitted he had the ability to pay. Yes, Your Honor. Let me just ask you this about that. If you look at the transcript, I think the word fine only comes up twice. One, when the Court says, I'm imposing a fine of $25,000. And the second time when the defense attorney objects and says, you know, when the defense attorney is asked at the end, do you have any objections? Yes, and refers specifically to the fine. So it's hard, I don't understand what reasoning the Court used to get to the $25,000 fine because it doesn't appear anywhere in the transcript. It doesn't say, I'm basing it on the facts in the PSR or anything of that nature. Can you point me to what the Court's reasoning was on this? So a couple of points, Your Honor. First of all, in our brief, we identify a number of cases where this Court has held that if it appears that the Court has reviewed the PSR, that anything that is in the PSR, we can infer that the Court relied on that. The second point is, I think you're reviewing for plain error because there was no specific objection from the defendant. There is this general vague objection at the end. We object to the sentence, including the fine. But that didn't put the district court on notice that it was the lack of specific reasons rather than the amount of the fine. The third thing I would say, Your Honor— Well, didn't they say we object to the substantive reasonableness or we think that the fine was substantively unreasonable? That's correct, Your Honor. So to the extent the argument on appeal was $25,000 is too much, that would be a preserved claim. But that's not the argument on appeal. The argument on appeal is that either he didn't have an ability to pay, which he admitted by not objecting to the PSR, or that the district court didn't sufficiently articulate the reasons. That's not a substantive reasonableness claim. That's a procedural claim that he did not specifically identify to the district court and give the district court the opportunity to say, you're right, Mr. Dubois, here are the reasons why you're getting that fine. Let me make sure I understand. So the pre-sentence investigation report stated as a fact that he could afford to pay a fine of $25,000? A fine within the guideline range, yes, Your Honor. And this was at the low end of that range. And the upper end being? I believe it was $250,000. I'm guessing there, Your Honor. I was focused on what the court actually imposed. But it did say a guideline range. And there was no objection to that assertion of fact in the pre-sentence investigation report? That's correct, Your Honor. Judge Rosenbaum, I don't know if I fully answered your question. I think the only other point I would say is I don't believe this court has ever suggested that a district court has to, in addition to discussing the statutory factors for imposing a sentence, parse out, and here's why this part of the sentence, the confinement, and this part of the sentence, the supervised release, and this part is the fine. I believe that the court's, in this case, a very thorough colloquy with both parties, a lot of commentary of its own on why it was imposing the sentence, can all be properly applied not only to the sentence of incarceration and supervised release, but to the fine as well. For those reasons, we'd ask the court affirm the district court. Thank you. Thank you, Mr. Mendell. Ms. Kaplan. Thank you, Your Honor. Just briefly on the Second Amendment, Mr. Dubois raised an as-applied challenge in the district court, document 119 at 157, and in his brief at 18, he said that he was raising a challenge that his conviction for being a felon in possession was unconstitutional as applied. Also, briefly on the fine, Mr. Dubois objected to the entirety of the sentence as both procedurally and substantively unreasonable, specifically objected to the fine as substantively unreasonable, and even though he had objected, the district court did not take that opportunity to make any additional findings. It made no findings with regard to the fine. Judge Rosenbaum is correct. It was simply pronounced at the end. This is the low end of the guideline range as to the fine, $25,000. I would have to double-check, but I believe that's correct, Your Honor. Turning back to the controlled substance issue, it's Hornbook law that we apply the law in effect at the time of federal sentencing. I think Jackson will be informative as to the timing issue, and if this court decides to wait and resolve this case until after Jackson, we would ask for supplemental briefing on that as well. Can I turn your attention to something? I'm sorry to interrupt, but I want to make sure that I give you a chance to address it. With respect to the controlled substance offense meaning under the guidelines, to me, the strongest argument for why we refer to the state definition of a controlled substance is that when you look under 4B1.2, it also defines crime of violence, and there it says the term crime of violence means any offense, blah, blah, blah, blah, blah, and then under 2 is or the use or unlawful possession of a firearm described in 26 U.S.C. 5845A, and that is specifically 5845A is the definition of a firearm under federal law. It says unlawful possession of a firearm effectively as described in federal law. The parallel definition for controlled substance offense says possession of a controlled substance but doesn't specify under federal law or under the Controlled Substances Act schedules or anything of that nature. To me, the most compelling argument, I think all the policy arguments are in your favor. The problem is I don't think we get to them if we can't resolve this issue. I want to give you a chance to explain why it is that the wording of crime of violence doesn't require us when we look at controlled substance offense to not read into it under federal law. So a couple of points, Your Honor. First of all, both crime of violence and controlled substance offense require the categorical approach. Well, let me stop you right there. Why is that? Why does that require the categorical approach? Because it seems to me it requires the conduct approach, if you will, as opposed to categorical. And I wonder why you think that's not the case. Well, this Court's precedent dictates that you use the categorical approach under the crime of violence subsection. And we would submit that you also need to use that for the controlled substance offense because otherwise you violate both 28 U.S.C. 991's direction to avoid unwarranted disparity and 3553A's direction to the same. The federal definition in 26 U.S.C. 5845A is essentially to differentiate. It defines a firearm but not a generic firearm. Firearms under 26 U.S.C. 5845A and then explosive materials defined in 841C are special firearms, for lack of a better word. Sawed-off shotguns, silencers, things that are outside the ordinary firearm definition. And so we use the categorical approach. The government referred to Jackson, but I think the dissent in Jackson has the better analysis because if you just use state law, then you're going to have wide disparity. And if you don't use the categorical approach, for example, if I may, Your Honor, I see the red light. Every state can regulate whatever they want. New York City, for example, is famous for... If New York State decides to regulate sugar in large sodas, then you could get a career offender enhancement because they've decided to list that chemical. Right. And so I fully agree that there are compelling policy reasons. The problem is we can't get to them unless it's ambiguous. And in order to get to it's ambiguous, there needs to be a reason why the wording in crime of violence doesn't require a certain finding under the wording of controlled substance offense. And what I think I hear you saying is it doesn't because we apply the categorical approach. But if we think that you apply the conduct approach, what is your best argument for why the wording of crime of violence definition doesn't require a determination under the wording of controlled substance offense that federal or state applies? So, Your Honor, every circuit, almost every circuit to fall on the other side of the split and adopt a conduct-based approach does not address 28 U.S.C. 994, which expressly directs the commission in creating the career offender guideline to incorporate 21 U.S.C. 841. And so we would submit that that directs the commission to use the federal schedules in effect at the time of sentencing and the categorical approach to avoid the unwarranted disparity that 991 and 3553A forbid. Okay. I think we have your case, Ms. Kaplan. We're going to move to the second, Buckley versus the Secretary of Army. Thank you.